NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ALEJANDRO WALKER, III,<br><br>*Defendant.* | Crim. No.: 20-043 (KSH)<br><br>OPINION |

I. Background

Defendant Alejandro Walker, III entered a guilty plea on January 15, 2020 to a one-count information charging him with knowingly possessing 500 grams or more of cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). (D.E. 22, 24-26.) He was sentenced in July 2020 to a mandatory minimum term of 60 months' imprisonment followed by four years of supervised release. (D.E. 30, 32.) He surrendered to BOP custody on September 14, 2020 and was projected to be released on December 2, 2024. (D.E. 35, Mov. Br. at 3.)

In February 2022, Walker moved (D.E. 35) for compassionate release under 18 U.S.C. § 3582(c)(1)(A), arguing that the COVID-19 pandemic, coupled with his obesity, hypertension, and high cholesterol, constituted "extraordinary and compelling reasons" for release. (Mov. Br. at 6-13.) He also took issue with the conditions of his confinement at USP Lewisburg, including the BOP's COVID-19 mitigation measures and corresponding suspension of rehabilitative programming. (*Id.* at 3-6, 14.) The government opposed on grounds that Walker's medical conditions

1

were not sufficiently "extraordinary compelling," and further that the Section 3553(a) sentencing factors weighed against his release. (*See generally* D.E. 41, Corr. Opp. Br.)

While Walker's motion was pending, the BOP resumed its programming and Walker successfully completed the Residential Drug Abuse Program ("RDAP"). (D.E. 43, Supp. Br. at 2.) This appears to have accelerated his release date by one year to December 2, 2023. *See* Federal Bureau of Prisons, *Find an inmate*, BOP Register No. 71418-050, https://www.bop.gov/inmateloc/ (last visited Aug. 24, 2023); *see also* 18 U.S.C. § 3621(e)(2)(B). On December 22, 2022, Walker was released to the custody of Residential Reentry Management ("RRM") New York to serve the remainder of his sentence. (Supp. Br. at 1.) Accordingly, on May 4, 2023, the Court directed Walker's attorney to file an updated submission addressing "the conditions at RRM New York [and] Walker's medical and nutrition regimens in his new environment." (D.E. 42.) Counsel filed a timely response urging the Court to consider Walker's compassionate release application on its merits because of the conditions at his RRM facility and his unchanged medical diagnoses.[1] (D.E. 43.)

II.   **Discussion**

A term of imprisonment may only be modified "under very limited circumstances." *United States v. Suarez*, 2023 WL 3052726, at *2 (D.N.J. Apr. 24,

---

[1] The government did not oppose or otherwise address Walker's supplemental submission.

2023) (McNulty, J.) (citing *In re Morris*, 345 F. App'x 796, 797 (3d Cir. 2009)). Relevant here is 18 U.S.C. § 3582(c)(1), which provides as follows:

> (A) [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction;
>
> [. . .]
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

Here, Walker sought compassionate release from the warden at FCI Fort Dix[2] and his request was denied on July 16, 2021. (D.E. 35-2, Def. Ex. B.) The government does not dispute that Walker fully exhausted his administrative remedies (Corr. Opp. Br. at 3), and it does not appear that Walker's transfer to RRM New York has any impact on exhaustion (Supp. Br. at 2). Accordingly, the Court will consider his application on its merits.

The United States Sentencing Commission has promulgated a policy statement that, in relevant part, allows a court to grant compassionate release where:

---

[2] As indicated *supra*, Walker was incarcerated at USP Lewisburg at the time the motion was briefed. (*See* Mov. Br. at 3, 6.)

(i) extraordinary and compelling reasons warrant the reduction; (ii) the defendant is not a danger to the safety of others or to the community under 18 U.S.C. § 3142(g); and (iii) release would comport with the § 3553(a) factors, to the extent applicable. U.S. Sent'g Guidelines Manual ("USSG") § 1B1.13 (U.S. Sent'g Comm'n 2018). The term "extraordinary and compelling" is not defined by statute, and so the Court looks to the Sentencing Commission's policy statement for guidance. *See Suarez*, 2023 WL 3052726, at *2. The application notes to the policy statement provide that a defendant's medical condition, age, or family circumstances may, under certain circumstances, serve as "extraordinary and compelling" reasons for compassionate release. USSG § 1B1.13, Application Note 1(A)-(C). The application notes also include a catchall provision, which states that "other reasons" may be sufficient where "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in [the enumerated] subdivisions." *Id.*, Application Note 1(D).

According to Walker's BOP medical records (D.E. 35-3; D.E. 41-1), he is obese and suffers from hypertension and high cholesterol. Both obesity and hypertension are recognized by the CDC as conditions that may place a person at increased risk of serious illness from COVID-19. *See* CDC, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated May 11, 2023) (last visited Aug. 24, 2023).[3]

---

[3] The CDC also cautions that "[t]he risk of severe illness from COVID-19 increases sharply with higher BMI." *Id.* Individuals are considered obese if they have a BMI between 30 and 40, and severely obese if they have a BMI higher than 40. *See id.*

4

However, a defendant with a listed condition is not automatically entitled to compassionate release. *See United States v. Matos*, 2022 WL 702858, at *6 (D.N.J. Mar. 9, 2022) (McNulty, J.) (denying compassionate release to defendant with hypertension and obesity); *see also United States v. Hagins*, 2023 WL 3674169, at *3 (E.D. Pa. May 25, 2023) (same, where inmate suffered from hypertension, obesity, and high cholesterol). Rather, the policy statement clarifies that a qualifying medical condition must "substantially diminish[] the ability of the defendant to provide self-care" within his environment. USSG § 1B1.13, Application Note 1(A)(ii).

Significantly, Walker was fully vaccinated in August 2021,[4] so he is "substantially protected from COVID-19 infection and, in the case of [a] breakthrough infection, from severe symptoms." *United States v. Hernandez*, 2022 WL 17820248, at *3 (D.N.J. Dec. 19, 2022) (Kugler, J.); *accord United States v. Pena*, 2023 WL 2263578, at *3 (D.N.J. Feb. 28, 2023) (Chesler, J.) (recognizing that "the weight of medical evidence is that vaccines are effective at protecting people from getting seriously ill, being hospitalized, and dying") (internal citations and quotations omitted). Indeed, the Third Circuit has recognized that "[g]iven vaccine availability, a prisoner likely will not be able to prove that his personal risk of serious illness from COVID-19 is an extraordinary and compelling reason for release unless he can

---

At the time of his original submission, Walker had a BMI of 38.4. (Mov. Br. at 10, n. 5.)

[4] Walker received the Janssen vaccine in August 2021, which only requires one dose. (D.E. 41-1 at 134.) He declined a booster while in BOP custody and has not received a booster since his transfer to RRM New York. (*Id.*; *see* Supp. Br. at 2.)

5

convincingly show that . . . he 'remain[s] vulnerable to severe infection, notwithstanding the vaccine.'" *United States v. Estevez-Ulloa*, 2022 WL 1165771, at *2 (3d Cir. Apr. 20, 2022) (quoting *United States v. Rucker*, 27 F.4th 560, 563 (7th Cir. 2022)).

Defense counsel's supplemental submission paints a bleak picture of Walker's RRM facility, which is described as "crowded and unclean." (Supp. Br. at 1.) According to the submission, Walker has one roommate but shares a communal bathroom that has only two toilets with 22 other residents. The facility provides no regular housekeeping and instead relies on residents to keep the common areas clean. Residents are given only unhealthy, microwavable meals, which they often eat in their rooms due to lack of space in the cafeteria. Indeed, although the facility houses approximately 200 residents, the cafeteria has only two tables that can seat six residents at a time.

Notwithstanding, the record does not establish that Walker is unable to adequately care for himself and his medical conditions while in his RRM facility. As a preliminary matter, Walker is not confined to the facility. He is allotted two hours every two weeks to go shopping for groceries and personal hygiene products. He also can visit his family one weekend per month (from Friday to Sunday) and is given a six-hour social pass once a month to eat dinner at a restaurant with his family. Moreover, Walker has opportunities for physical conditioning in his facility's backyard or at the park across the street. He also joined a private gym at his own expense, which he can use twice weekly for two-hour periods.

Further, it appears that Walker's medical conditions have been stable since his transfer to RRM New York.  While at FCI Fort Dix, Walker was prescribed several medications for his high cholesterol and hypertension.  (Mov. Br. at 9-10; *see, e.g.*, D.E. 41-1 at 7-9, 90, 137-39.)  Although at times Walker's prescriptions were adjusted to better treat his hypertension (*see* D.E. 41-1 at 8-9, 137-39), his medical records reveal that his conditions were well-managed.  Defense counsel has not reported any remarkable changes to Walker's health since his transfer; he is free to see a doctor upon request, and he has availed himself of this opportunity.[5]

The Court need not, therefore, move further in the analysis and consider whether early release would comport with the factors set forth in 18 U.S.C. §§ 3142(g) and 3553(a).  The Court does note that the sentencing factors in Section 3553(a) of just punishment, promoting respect for the law, and protection of the public all support the sentence Walker is serving, and that there is nothing in this record to suggest that his sentence is "greater than necessary" to comply with the enumerated purposes of sentencing.  *See* 18 U.S.C. § 3553(a)(2)(A), (C).

---

[5] Counsel appears to argue that Walker's health was better controlled in the prison setting because his doctors' visits were "automatically scheduled quarterly," whereas now he can "only see a doctor upon his request." (Supp. Br. at 2.)  But  Walker's medical visits will not be "automatically scheduled" for him upon his release (in a matter of months) from BOP custody—he will need to do that on his own, which is exactly what he is learning to do at his RRM facility.

7

III.     Conclusion

For the foregoing reasons, Walker's application (D.E. 35) is denied, and an appropriate order will issue.

Dated:  August 24, 2023                             /s/ Katharine S. Hayden
                                                    Katharine S. Hayden, U.S.D.J.